# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 50243 | **DATE** | 2/13/2002 |
| **CASE TITLE** | Jarrett vs. Gobble | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's motion for summary judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the reverse Memorandum Opinion and Order, defendant's motion for summary judgment is granted. The court also hereby reaffirms its previous dismissal of plaintiff's claims for damages against defendant in his official capacity. (Doc. No. 20) This case is hereby dismissed in its entirety.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

# MEMORANDUM OPINION AND ORDER

Plaintiff, Hewlett M. Jarrett, has filed a four-count second-amended complaint against defendant, Charles Gobble, in both his individual and official capacities as a captain and head of the internal affairs division at Dixon Correctional Center ("Dixon"), in which he alleges various constitutional violations under 42 U.S.C. § 1983 while an inmate at Dixon. Jurisdiction and venue are proper based on 28 U.S.C. §§ 1331, 1391(b). Before the court is Gobble's motion for summary judgment, filed pursuant to Federal Rule of Civil Procedure 56.

In his claims for injunctive relief against Gobble in his official capacity (the court previously dismissed the official capacity claims seeking money damages), Jarrett requests the return of a certain book, *The Book of Runes*, confiscated during a "shakedown" of his cell at Dixon. Apparently, however, the book has since been lost or destroyed. Because there is no book for the court to order returned, the remaining official capacity claims are dismissed.

The shakedown of Jarrett's cell revealed Jarrett had been hiding various contraband, including weapons and commissary items, and had drawn symbols on the wall of his cell, all of which violated Dixon's rules. (LR 56.1(a) ¶¶ 7, 8, 13)[1] The symbols came from *The Book of Runes*, which was also found in Jarrett's cell. (Id. ¶ 9, 13) Not understanding its contents, Gobble seized the book to have Dixon's publications review committee determine if it too was contraband. (Id. ¶ 15) In fact, *The Book of Runes* contains rituals and other information used in the practice of the Wiccan religion, Jarrett's professed faith of choice. (Id. ¶¶ 10, 12) Jarrett thus claims in Count I the confiscation of and failure to return the book interfered with the free exercise of his religion. In the court's view, however, Gobble's seizure of *The Book of Runes* was "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). Jarrett does not dispute Dixon has a legitimate interest in prohibiting contraband, including reading material that is incompatible with a prison environment. See generally Thornburgh v. Abbott, 490 U.S. 401 (1989). Instead he argues that, because Gobble did not know *The Book of Runes* was a religious text, or what it was at all for that matter, "he could not have considered the book to be a violation of prison security and, therefore, his confiscation of it was or might be considered unreasonable." (Pl. Resp., p. 7) But it is exactly because Gobble did *not* understand the book's contents – i.e., whether it was contraband or not – that his actions were reasonable. Rather than leave a potentially contraband book with Jarrett, who had just been found to be concealing other dangerous contraband in his cell, Gobble reasonably decided to have the book reviewed by people whose job is to determine if a particular publication is prohibited – the publications review committee. The fact that *The Book of Runes* was not returned to Jarrett, because it was either lost or destroyed, does not change Gobble's initial seizure of the book being rationally related to Dixon's interest in keeping contraband out of an inmate's hands. Moreover, it is undisputed Jarrett has since been able to purchase other Wiccan books and practice other aspects of his religion. (LR 56.1(a) ¶¶ 29-32) See Canedy v. Boardman, 91 F.3d 30, 33 (7th Cir. 1996) ("A prisoner's right to freely exercise his religious beliefs does not depend upon his ability to pursue each and every aspect of the practice of his religion."). Finally, Jarrett's only suggested alternative – having prison officers "carefully review the confiscation of any religious type literature" on the spot – is simply not practical in light of a prison's limited economic, administrative, and personnel resources. See O'Lone, 482 U.S. at 352-53; Al-Alamin v. Gramley, 926 F.2d 680, 686 (7th Cir. 1991). Such a solution is especially unnecessary here where the temporary detention of an inmate's "religious type literature" by the publications review committee adequately accommodates an inmate's exercise of religion alongside the prison's interest in maintaining security and prohibiting contraband. See Turner, 482 U.S. at 90-91 ("This is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint.").

In Count II, Jarrett recasts the seizure of his book as a free speech claim. He does not pursue this theory in his response brief, though, and the court sees little to be gained by analyzing the issue in terms of free speech. See Sasnett v. Litscher, 197 F.3d 290, 292 (7th Cir. 1999). It accordingly dismisses Count II.

Jarrett claims in Count III the seizure of his book was also a violation of due process under the Fourteenth Amendment. Although Gobble placed *The Book of Runes* in a special room pending review by the publications review committee (LR 56.1(a) ¶ 18), it is unclear when and how it was subsequently lost or destroyed. In any event, the deprivation of Jarrett's book does not violate due process because adequate state post-deprivation remedies are available. See Hudson v. Palmer, 468 U.S. 517, 536 (1984); Stewart v. McGinnis, 5 F.3d 1031, 1035-36 (7th Cir. 1993), cert. denied, 510 U.S. 1121 (1994).

Finally, Count IV alleges Jarrett was treated unequally and differently than "practitioners of other faiths," in violation of the Equal Protection Clause of the Fourteenth Amendment. The first problem with this claim is that there is no evidence to even suggest Gobble intentionally singled out Jarrett because he is a member of a particular group, such as the Wiccan religion or, even more broadly, a minority or non-traditional religion. See David K. v. Lane, 839 F.2d 1265, 1271-72 (7th Cir. 1988); Al-Alamin, 926 F.2d at 686. Indeed, it is hard to see how Gobble could have been purposefully discriminating against Jarrett because of his religious beliefs when Jarrett admits Gobble did not even understand the contents of *The Book of Runes*, let alone that it was some sort of religious text. To that end, there is no indication Gobble knew what Wicca was or that Jarrett practiced it. The second problem with Jarrett's equal protection theory is that, as with a free exercise of religion claim, unequal treatment among inmates is justified if it bears a rational relation to a legitimate penal interest. See Williams v. Lane, 851 F.2d 867, 881 (7th Cir. 1988), cert. denied, 488 U.S. 1047 (1989). And, as explained above, Gobble's seizure of *The Book of Runes* undeniably bore such a rational relationship to Dixon's interest in prohibiting contraband.

For the reasons stated above, Gobble's motion for summary judgment is granted. This case is dismissed in its entirety.

---

[1] Because Jarrett has not responded to Gobble's LR 56.1(a) statement of facts, all of the facts in that statement are deemed admitted for purposes of Gobble's summary judgment motion. See N.D. Ill. R. 56.1(b)(3)(B).

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Western Division

Hewlett M. Jarrett

v.

Capt. Gobble

**JUDGMENT IN A CIVIL CASE**

Case Number: 00 C 50243

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that defendant's motion for summary judgment is granted. The court also hereby reaffirms its previous dismissal of plaintiff's claims for damages against defendant in his official capacity. This case is hereby dismissed in its entirety.

All orders in this case are now final and appealable.

FILED-WD
02 FEB 13 PH 3:18
CLERK
U.S. DISTRICT COURT

Michael W. Dobbins, Clerk of Court

Susan M. Wessman, Deputy Clerk

Date: 2/13/2002